**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **RENE O. CAMPOS,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:22-cv-00674** |
| | § | |
| **WEIS BUILDERS, INC.** | § | |
| | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Rene O. Campos files this First Amended Complaint complaining of Defendant Weis Builders, Inc. and respectfully shows as follows:

**PARTIES**

1. Plaintiff Rene O. Campos ("**Campos**") is a Texas citizen who resides in Travis County, Austin, Texas.

2. Defendant Weis Builders, Inc. ("**Weis Builders**") is a Minnesota corporation that engages in business in Texas, has committed torts in Texas and has sued and been sued in Texas. Defendant Weis Builders has been served and made an appearance herein.

**JURISDICTION AND VENUE**

3. The Court has personal jurisdiction over Defendant because it conducts substantial business in Texas and a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Texas, and in this District and Division.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 exclusive of interests and costs, and this

is a suit between citizens of different states. Plaintiff is a citizen of Texas. Defendant is a citizen of Minnesota.

5. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

6. 2013 Travis Oak Creek, LP ("**Travis Oak**") is a Texas limited partnership whose sole purpose is "to acquire, construct, own, develop, operate, maintain, manage, lease, sell, mortgage or otherwise dispose of" certain real property located at 2324 Wilson Street, Austin, Texas 78704 (the "**Property**"), "together with the improvements existing or to be constructed or rehabilitated on the Property," which improvements include the multi-story, multi-family, low-income apartment buildings more commonly referred to as the "Lucero Apartments." At all times relevant to this suit and the facts giving rise to the same, Plaintiff Campos has been what is known as a "Key Principal" of Travis Oak. The claims asserted herein are personal to Plaintiff and they do not seek relief for injuries sustained by or suffered by Travis Oak.

7. On May 21, 2014, Travis Oak, as "Owner," entered into a construction contract with Defendant Weis to perform construction services at the Property, which was one aspect of a contemplated tax credit transaction to redevelop the Property including the construction of a new, affordable apartment community (the "Project"). Plaintiff is not a party to that contract (the "Construction Contract") although he is the human being who signed it on behalf of the general partner of Travis Oak, and he is one of several people to whom Defendant Weis owes express indemnity obligations, as described herein below.

8. Before the Construction Contract was signed -- when Travis Oak was looking for the right general contractor to perform construction at the Property within the parameters of the overall Project, Weis expressed its interest and availability to serve as the contractor, and asked for an opportunity to tout its experience, via interviews with Travis Oak personnel and Plaintiff Campos, in his personal capacity.

9. In an effort to market and sell its services related to the Project, representatives of Defendant Weis including Jay Weis and Erik Weis, Karl Meeks, Derek Armstrong and Brett Christofferson, met with Plaintiff Campos and other Travis Oak representatives in Dallas, and engaged in extensive discussions and meetings about: a) the Project, and its structure as a tax credit transaction; b) Plaintiff's personal relationship to Travis Oak, and to the Project as a key principal and guarantor; c) specific Project requirements that were unique to this transaction; and, d) the interrelationship of the performance of the Construction Contract's requirements on a timely basis, on the one hand, and the availability of financing of the construction work and the contemplated permanent financing for the Project, on the other hand.

10. Through and during those meetings, Defendant Weis came to know and understand that in order to finance the construction of the Project that would be performed pursuant to the Construction Contract, Travis Oak would obtain a construction loan and Plaintiff Campos would be required to guaranty that loan. Defendant Weis learned that Travis Oak obtained a $26M loan (the "**Construction Loan**") from JPMorgan Chase Bank, N.A. ("**Chase Bank**) that Plaintiff Campos was personally required to guaranty by executing a Guaranty of Payment and Completion dated May 23, 2014 (the "**Guaranty**"). Weis also knew that through his execution of the Guaranty, Plaintiff Campos guaranteed timely repayment of the Construction Loan in full, and he also guaranteed Defendant Weis's performance of all the terms and conditions of its Construction

Contract with Travis Oak.[1] Weis knew all of this before the Construction Contract was signed by Travis Oak and before Plaintiff Campos signed the Guaranty.

11. Prior to execution of the Construction Contract, Weis expressed its understanding about the Project's unique transactional requirements, including its understanding about the extent of Plaintiff's relationship to Travis Oak and to the Project, and its understanding about the personal guaranty liabilities Plaintiff Campos would assume and that such guaranty liability and Travis Oak's ability to obtain tax credits was dependent upon Weis's full and timely performance of construction and its administrative responsibilities as a professional construction manager. Based upon those expressed understandings, Defendant Weis gave numerous assurances to Plaintiff Campos personally and both promised and represented to Campos personally, that if selected as the Project's general contractor, Weis would agree to act in a position of trust and confidence and would agree to "time being of the essence" obligations, so that Travis Oak and Campos personally could complete the overall transaction as structured, without incurring personal liability arising from anything Weis did or failed to do -- whether as required by the Contract or otherwise, as a reasonably prudent general contractor under the same or similar circumstances would act.

12. In reliance upon Weis's assurances, promises and representations made by Weis to him personally, Plaintiff Campos executed a number of guaranties exposing him to personal liability and he agreed to and incurred other personal obligations, directly and contingently, to

[1] The Guaranty states in relevant part: "[E]ach Guarantor jointly and severally hereby guarantees the performance by Weis Builders, Inc. ('Contractor') of all the terms and provisions of the Construction Contract (the 'Construction Contract') between Borrower and Contractor … pertaining to Borrower's obligations with respect to the construction of the Improvements. Without limiting the generality of the foregoing, Guarantor guarantees that: (a) construction of the Improvements shall commence and be constructed within the time limits set forth in the Construction Contract; (b) the Improvements shall be completed substantially in accordance with the Plans and the other provisions of the Construction Contract, without substantial deviation therefrom unless approved by Lender in writing (or otherwise permitted by the Loan Agreement); (c) the Improvements shall be constructed and completed free and clear of any mechanic's liens, materialman's liens and equitable and other liens except as permitted in the Loan Agreement; (d) all costs of constructing the Improvements shall be paid when due; and (e) the [Construction] Loan proceeds shall remain available for disbursement free and clear of any mechanic lien affidavits or claims or retention notices."

third parties. He also wanted to be sure that Travis Oak could benefit from those assurances, promises and representations that were made to him personally to guide his personal decision making, so he asked that they be included in the Construction Contract. It therefore included many of the assurances, promises and representations made to him personally. For example, the language set forth in Article 3 of the Construction Contract, which was included for the benefit of Travis Oak states, in pertinent part (emphasis added), that Weis:

> **[A]ccepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect** and exercise the Contractor's skill and judgment **in furthering the interests of the Owner: to furnish efficient business administration and supervision**; to furnish at all times an adequate supply of works and material; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests.

13. During the pre-Construction Contract meetings, Weis also came to know and understand that the Construction Loan was intended to serve as temporary financing for the Project, and before its maturity date, the Construction Loan was to be refinanced pursuant to a $27.3M Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014 ("**Forward Commitment**") from PNC Bank (as delegated underwriting and servicing lender for Fannie Mae) and Travis Oak (as borrower). Defendant Weis also knew or should have known that Plaintiff Campos also had executed guaranties of certain obligations under the Forward Commitment, and further, that in order for the permanent mortgage loan contemplated by the Forward Commitment to close, PNC Bank had to receive:

> [A] copy of the certification of substantial completion (AIA Document G-704, or its then-current equivalent) executed by the appropriate parties including the architect, the general contractor and the owner representative for the Project

A timely signed Certificate of Substantial Completion is commonplace in construction contracts and it is the subject to considerable contractual coverage. And Weis knew and understood -- as all qualified, experienced, professional commercial general contracting firms do in all projects that

involve financing -- that Campos' decision to incur these personal obligations and to direct Travis Oak to sign the Construction Contract was made in reliance upon Weis's above-described assurances, promises and representations before the Construction Contract was signed, to Campos personally, that Weis understood the transaction's specifics, and the need to copiously comply with the Construction Contract's requirements, including those which fell into the category of business or contract administration, in contrast to physical construction work. And in this particular regard, Defendant Weis undertook a duty to Plaintiff Campos personally, to act as professional construction managers, in a non-negligent manner such that Defendant Weis knew, understood and foresaw that Campos might be personally injured or damaged if Weis failed to act as a professional construction manager for the Project, in a non-negligent manner.

14. The Construction Contract was heavily negotiated by Travis Oak and Weis, to conform to the overall Project requirements and to ensure conformity to the pre-Construction Contract assurances, promises and representations Defendant Weis made to Plaintiff Campos personally, to induce him to authorize Travis Oak to sign it with Weis. Paragraph 8.1.3 of the General Conditions prescribes the date of Substantial Completion to be the date certified by the Architect in accordance with paragraph 9.8. Paragraph 9.8.4 requires, when the Work is substantially complete, that the Architect prepare a Certificate of Substantial Completion that shall indicate the date of Substantial Completion. Paragraph 9.8.5 requires that the Certificate of Substantial Completion be submitted to the Owner (i.e., Travis Oak) and Contractor (i.e., Defendant Weis) for their written acceptance of responsibilities assigned to them in such Certificate.

15. And in recognition of the duties Defendant Weis assumed or otherwise owed to non-parties to the Construction Contract, the Construction Contract included a negotiated

indemnification provision that is set forth as Section 3.18.1 of the General Conditions. It provides, on an emphasized basis, "to the fullest extent permitted by law" and subject to the limitation of liability to Travis Oak only, set forth in Section 15.1.6, Defendant Weis shall indemnify and hold harmless Travis Oak[2], its affiliates and each of their respective officers, directors, partners, shareholders and employees, from and against all claims, damages, losses, costs and expenses, including but not limited to exemplary damages, fines, penalties, attorneys fees, expert fees and dispute resolution costs "arising out of or resulting from the performance of Contractor's Work or its other obligations under this Agreement" but only if such liabilities are caused by "any act or omissions of the Contractor, the breach of a warranty or provision of the Construction Contract, or its wilful conduct.

16. While Defendant Weis failed to achieve Substantial Completion on a timely basis, and it and Travis Oak have disagreed about that fact, that failure is not the basis of Plaintiff Campos' complaint and causes of action in this case. But there is no dispute that the Project architect (Travis Lucy), Defendant Weis and Travis Oak all agreed the Project was Substantially Complete -- well in advance of the contemplated closing of the permanent mortgage financing that would have been provided under the Forward Commitment, to pay off the Construction Loan in full, on or before its initial maturity date.

17. The only application for a certificate of substantial completion that was submitted by Defendant Weis was delivered in March of 2016 which is after the dates on which it claimed the Project was substantially complete. Although there was no dispute about *whether* the Project was Substantially Complete at the time Weis submitted that application, Defendant Weis ultimately refused to sign a G-704 Certificate of Substantial Completion -- even one that reflected

[2] Travis Oak and Weis agreed that as among themselves, they would waive certain types of claims. Parties indemnified by Defendant Weis did not waive any claims.

disagreement among the necessary signatory about the actual date of Substantial Completion and showed different dates, or one that showed an agreed date for certificate purposes while it reserved to the parties the right to allege an earlier date in connection with an assertion of any claims related to when substantial completion actually occurred.

18. Rather than professionally manage the certificate of completion requirement in a non-negligent fashion, Defendant Weis withheld its signature to create leverage that it would use from then on, to attempt to collect payments under the Construction Contract that it knew were not due or owing, or that were disputed by Travis Oak. This included its Final Payment request(s).

19. As the scheduled closing date for the financing to be provided by the Forward Commitment approached, the Project was substantially complete, but not finally completed by Defendant Weis's own admissions. And Weis continued its refusal to execute a G-704 so that Travis Oak could close on its contemplated permanent financing under the Forward Commitment and pay off the Construction Loan. In fact, the scope of disagreements between Weis and Travis Oak were expanding, because Travis Oak was discovering various defects in some of the work Weis had performed that Weis would not fix, repair or remediate. Those defects and Weis's failure or refusal to fix, remediate or repair them are not the subject of this lawsuit or Plaintiff Campos' claims in this lawsuit or the injuries or damages he claims in this lawsuit.

20. For several reasons, including Defendant Weis's persistent refusal to execute any form of G-704, Travis Oak was required to pursue an extension of the original maturity date of the Construction Loan because it could not fulfill the condition expressed in the Forward Commitment requiring delivery of a G-704 to, in turn, close the permanent loan and obtain funds necessary to pay off the Construction Loan. Travis Oak obtained such an extension – to May of 2017 – and Weis knew it.

21. Unfortunately, the disagreements between Defendant Weis and Travis Oak were growing, without any resolution in sight. Weis refused to complete the work that it still had not performed at the Project, it continued its refusal to sign and deliver a G-704 after the extension of the Construction Loan's maturity date, and Weis escalated its efforts to secure collection of a disputed demand for payment of additional contract sums. Weis also refused to honor its warranty obligations to repair certain work it had done that was done defectively. And in pursuit of its sole quest to get paid rather than fulfill its obligations and duty to act in the interests of the Owner Travis Oak, and solely believing it could leverage payment of disputed sums it claimed were due under the Construction Contract, Weis filed a mechanic's lien against the Project.

22. When Weis did these things, Weis knew its actions would cause injury and harm to Plaintiff Campos, personally. Weis was represented by experienced Texas legal counsel including Shelly Masters at the Cokinos Young law firm -- who specializes in construction disputes -- who repeatedly acknowledged on behalf of Weis that Weis would not fulfill any of its obligations or duties with regard to the Project, contractually or otherwise, unless Weis received full payment of funds it knew it was not owed, or that were disputed. And Weis knew that its decisions and actions would cause Travis Oak to default on its financing obligations, and its obligations under its Partnership Agreement, which in turn, would trigger guaranty and other liabilities on the part of Plaintiff Campos, personally. Weis then sued Travis Oak for foreclosure of its mechanic's lien, and to recover the payment it claimed was due.[3]

23. Chase Bank declared a default under the Construction Loan due to non-payment of the outstanding sums due thereunder by the end of May of 2017. Chase seized in excess of

[3] Travis County District Judge Karin Crump found the filing of the mechanic's lien to be wrongful as a matter of law and ordered its removal.

$800,000.00 of funds in which Plaintiff Campos personally had an interest and applied it to reduce the outstanding debt owed under the Construction Loan.

24. The partners in Travis Oak who were not affiliated with Plaintiff Campos took action to remove the Campos affiliated general partner in Travis Oak as its general partner and sued Plaintiff Campos personally, seeking to recover millions of dollars from him and seeking to declare that his interests in the Project and Travis Oak were forfeited.

25. Rather than foreclose as threatened, Chase Bank sold the Construction Loan and all rights thereunder to PNC Bank in October of 2017. PNC Bank and its affiliates were partners in Travis Oak. Rather than seek payment of the purchased Construction Loan from Travis Oak (i.e., the Partnership that owed the money), PNC sued Plaintiff Campos under his guaranty of the Construction Loan, to obtain payment of the balance due thereunder.

26. Defendant Weis undertook, accepted and owed to Plaintiff Campos a duty of ordinary care, if not a heightened duty of trust and confidence, to act as a non-negligent professional construction manager of the Project, so as not to cause him personally to suffer foreseeable loss, injury or damage. Defendant Weis breached its duty to Plaintiff Campos. Weis did not fulfill its pre-contractual promises to Plaintiff, it placed its own interests ahead of Travis Oak's and ahead of Plaintiff Campos', knowing that its refusal to cooperate with the Project Architect, and its refusal to execute required documents including a G-704, its filing of a mechanic's lien, and its suit to foreclose, it would actually and foreseeably cause Plaintiff Campos substantial and foreseeable personal injury.

27. This suit does not seek to hold Weis accountable for its actions that harmed or injured Travis Oak. It seeks only to hold Weis accountable for its actions and omissions that directly harmed Plaintiff Campos, personally and extensively. Plaintiff Campos caused the

Construction Loan to be paid off; he funded or caused the funding of the purchase of the PNC Bank partner interests in Travis Oak; and, he incurred and paid well in excess of $5 million in legal and transactional fees and costs, all as a direct and proximate result of Defendant Weis's negligent performance of its duties and obligations as a professional construction manager, and its other acts of negligent or intentional misconduct, as described above. Plaintiff Campos also incurred additional personal liability exposures to mitigate the losses and damages he suffered as a result of Defendant Weis's actionable misconduct as described herein, which may result in his suffering additional future damages, and he reserves the right to amend or supplement should those future damages be incurred.

## CAUSES OF ACTION

### First Cause of Action: Suit for Indemnity

28. The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

29. Section 3.18.1 of the General Conditions (one of the negotiated terms of the Contract) requires Defendant Weis to, "to the fullest extent permitted by law," indemnify and hold harmless Travis Oak, its affiliates and each of their respective officers, directors, partners, shareholders and employees ("Indemnitees"), from and against all claims, damages, losses, costs and expenses, including but not limited to exemplary damages, fines, penalties, attorneys fees, expert fees and dispute resolution costs "arising out of or resulting from the performance of Contractor's Work or its other obligations under this Agreement" but only if such liabilities are caused by any act or omissions of the Contractor, the breach of a warranty or provision of the Construction Contract, or its wilful conduct.

30. Plaintiff Campos is an Indemnitee who is entitled to recover of and from Defendant

Weis, all losses, damages, costs and expenses, penalties, attorneys' fees, expert fees and dispute resolution costs incurred by him as a result, in whole or in part, by: a) any of the acts or omissions of Defendant Weis or performance of its obligations under the Construction Contract; b) breach by Weis of any warranty or provision of the Construction Contract; or, c) Defendant Weis's wilful conduct, as described above.

31. Plaintiff Campos seeks to recover of and from Defendant Weis, all such losses, damages, costs and expenses, penalties, attorneys' fees, expert fees and dispute resolution costs incurred by him, in the past and if applicable, in the future.

**Second Cause of Action: Negligence**

32. The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

33. Defendant Weis owed or alternatively, it voluntarily and intentionally assumed a duty to Plaintiff Campos *personally*, requiring it to act as a reasonable and prudent professional general contractor and professional construction manager, to perform its obligations under the Construction Contract and otherwise with respect to the Project with care and skill, to cooperate with the Project Architect, and to furnish efficient business administration and to perform its obligations under the Construction Contract in an expeditious and economical manner consistent with the Owner's interests.

34. Defendant Weis failed to exercise ordinary care consistent with its assumed or actual duties to Plaintiff, and acted negligently, affirmatively or by omission or failure to act. Such negligence includes but is not limited to the following, singularly or in combination with each other: a) failing and refusing to execute a G-704 Certificate of Substantial Completion when and as needed by Travis Oak to close its permanent financing; b) seeking to enforce its payment

interests rather than performing its duties and obligations legally or contractually, as owed to Travis Oak and Campos personally; and, c) wrongfully filing and seeking to foreclose upon its mechanic's lien. Defendant Weis knew or reasonably should have known that these acts of negligence foreseeably would cause or trigger Plaintiff Campos to suffer injury, loss or damage, including liability under one or more of the guaranties he executed or as was otherwise necessary to preserve his interests in the Project and/or Travis Oak. At all times, Weis knew its negligent acts or omissions foreseeably would cause personal financial and non-economic injury, damages and harm to Plaintiff Campos.

35. Defendant's negligence proximately caused Plaintiff Campos to suffer financial and non-economic injury, loss and damages for which he sues, and for which he seeks recovery from Defendant Weis. Plaintiff reserves the right to seek damages suffered in the future, as a proximate result of Defendant's negligence.

**Third Cause of Action: Negligent Misrepresentation**

36. The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

37. Pleading further, and in the alternative to the extent necessary, Defendant Weis negligently and recklessly made representations and assurances to Plaintiff Campos personally, in the course of Defendant's business and in a transaction in which the Defendant had an interest, to secure or induce Plaintiff Campos to cause Travis Oak to select Defendant as the contractor for the Project, and to guide Plaintiff Campos -- who reasonably relied upon such representations and assurances to him personally, in deciding to execute various personal guaranties or to undertake personal liabilities that could be triggered by Weis's failure to perform and act as a reasonable and prudent contractor and professional construction manager, both administratively and in the

performance of the physical construction work it agreed to perform at the Project, under the same or similar circumstances, and in accordance with its pre-contractual assurances and representations to Plaintiff.

38. Defendant supplied false information to Plaintiff Campos personally, for the guidance of Plaintiff Campos who justifiable but detrimentally relied upon the same, and who incurred injury, damages and loss as a result of such falsities, and Defendant's negligent misrepresentations about its abilities to perform in a manner that would not cause Plaintiff Campos to suffer personal injury or harm.

39. Defendant did not exercise reasonable care or competence in communicating the information.

40. Defendant's negligent misrepresentations have proximately caused Plaintiff Campos to suffer financial and non-economic loss and injury for which he now sues, and for which he seeks recovery from Defendant Weis, estimated to be in excess of $10 million.

**Fourth Cause of Action: Breach of Duty of Trust and Confidence**

41. The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

42. Pleading further or in the alternative as may be necessary as evidenced in part by the indemnity obligation it incurred, Defendant Weis accepted a relationship of trust and confidence in connection with its role as the Project's general contractor and a professional construction manager, which covered the performance of its professional construction management and administrative actions, duties and obligations, and its physical construction actions, duties and obligations.

43. Under the facts and circumstances, in accepting that relationship, as a general contractor and professional construction manager, Defendant Weis assumed and owed a duty of trust and confidence to Plaintiff Campos, personally, who had personally guaranteed its performance of its duties and obligations under the Construction Contract, and that relationship is akin to a fiduciary duty, requiring Defendant to act in Plaintiff's best interests, to act with utmost good faith and with integrity of the strictest kind, and to refrain from self-dealing.

44. Defendant Weis breached its duty of trust and confidence by (singularly or in any combination) refusing to supply an executed Certificate of Substantial Completion, by placing its payment interests ahead of the interests of Plaintiff to avoid personal liability that would arise via a loss of Travis Oak's permanent financing and by otherwise leveraging its personal payment interests by refusing to perform necessary, incomplete work, failing to remediate defective work, wrongfully filing a mechanic's lien against the Project, and suing to foreclose on that lien.

45. Defendant Weis knew that it was violating its accepted relationship of trust and confidence in this manner, and did so with the intention of causing Plaintiff Campos to incur personal loss, injury and damages (both economic and non-economic), and Defendant Weis's breach of this duty of trust and confidence proximately caused Plaintiff Campos personally, to suffer such loss, injury or damages, all of which was foreseeable to Weis at all times relevant.

46. Plaintiff Campos is entitled to recover actual damages, both economic and non-economic, resulting from Defendant Weis' breach of its duty of trust and confidence and exemplary damages, all of which he seeks to recover of and from Defendant Weis.

**Fifth Cause of Action: Tortious Interference**

47. The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

48. Pleading further or in the alternative as may be necessary, at all times relevant, Defendant Weis knew that Plaintiff Campos had valid, enforceable contractual relationships with PNC Bank and Chase, related to the Project, its ownership and operation, and its financing. Defendant Weis was a stranger to those contracts.

49. In its role as general contractor and professional construction manager, Defendant Weis intentionally interfered with Plaintiff Campos' contracts with these parties by refusing to supply an executed Certificate of Substantial Completion, by placing its payment interests ahead of the interests of Plaintiff to avoid personal liability that would arise via a loss of Travis Oak's permanent financing and by otherwise leveraging its personal payment interests by refusing to perform necessary, incomplete work, failing to remediate defective work, wrongfully filing a mechanic's lien against the Project, and/or suing to foreclose on that lien.

50. Such interference hindered Plaintiff Campos' performance of his contractual obligations to third parties, and/or caused him to suffer actual damages and loss as direct and proximate result of Defendant Weis's interference.

51. Plaintiff Campos is entitled to recover actual damages, both economic and non-economic, resulting from Defendant Weis's breach of its duty of trust and confidence and exemplary damages, all of which he seeks to recover of and from Defendant Weis.

**JURY DEMAND**

52. Plaintiff hereby demands a trial by jury.

WHEREFORE, Plaintiff Rene O. Campos, prays that upon final hearing or trial of the causes of action pled herein, he recovers of and from Defendant Weis Builders, Inc.:

a. His actual, reliance and *compensatory* damages, and attorneys' fees as may be lawfully recoverable;

b. Pre-judgment and post-judgment interest in accordance with the law;

c. All costs of court; and,

d. All other legal and equitable relief to which Plaintiff may show himself justly entitled.

Respectfully submitted,

*/s/ Kenneth B. Chaiken*

Kenneth B. Chaiken
State Bar No. 04057800
kchaiken@chaikenlaw.com
Robert L. Chaiken
State Bar No. 04057830
rchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
5717 Legacy Drive, Ste. 250
Plano, Texas 75024
Ph.: (214) 265-0250
Fax: (214) 265-1537

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all counsel of record by electronic service and/or electronic mail on the 8th day of September, 2022.

/s/ *Kenneth B. Chaiken*
Kenneth B. Chaiken